*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★ ★ ★ ★

**MEMORANDUM OPINION**

No. 04-08-00459-CV

**IN THE INTEREST OF K.H.**

From the 289th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-JUV-03264
Honorable Carmen Kelsey, Judge Presiding

Opinion by:     Sandee Bryan Marion, Justice

Sitting:        Sandee Bryan Marion, Justice
                Phylis J. Speedlin, Justice
                Marialyn Barnard, Justice

Delivered and Filed:   April 8, 2009

AFFIRMED

This is an appeal from the trial court's orders of disposition and adjudication following a jury

trial for aggravated sexual assault in a juvenile case. We affirm.

**TESTIMONY OF CHILD COMPLAINANT**

Before allowing the complainant to testify, the trial court conducted a competency hearing.

The complainant was four years old at the time of trial, and she was three years old when she was

assaulted by appellant, her eleven-year-old brother. Appellant asserts the trial court erred in allowing

the complainant to testify because she was not competent to do so. As a general rule, a child is

competent to testify unless, after being examined by the court, she does not appear to possess

sufficient intellect to relate transactions with respect to which she is interrogated. *See* TEX. R. EVID. 601(a)(2). We review a trial court's ruling on whether a child witness is competent to testify for an abuse of discretion. *See Macias v. State,* 776 S.W.2d 255, 257 (Tex. App.—San Antonio 1989, pet. ref'd). To determine whether the trial court abused its discretion, we must review the entire testimony of the child. *See Dufrene v. State,* 853 S.W.2d 86, 88 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd).

In addition to challenging the complainant's competency to testify, appellant also contends the trial court erred in denying his objection to the totality of her testimony because her young age and inability to answer questions denied him his constitutional right of confrontation. A defendant's "right to confront [his] accuser necessarily includes the right to cross-examine." *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). Cross-examination allows the defendant to test the reliability of his accuser's testimony. "Whether the reliability of the testimony is otherwise assured turns upon the extent to which the proceedings respect the four elements of confrontation: physical presence, oath, cross-examination, and observation of demeanor by the trier of fact." *Romero v. State*, 173 S.W.3d 502, 505 (Tex. Crim. App. 2005).

With these principals in mind, we review the complainant's entire testimony to determine whether she was competent to testify and whether her young age prevented an effective cross-examination such that appellant was deprived of his right of confrontation. Prior to allowing the complainant to testify, the trial court asked her several questions:

> Q:  . . . Okay. And so, Ms. . . ., if someone asks you some questions, will you tell us the truth? Will you?
>
> A:  (Shakes head)

Q:     And you're shaking your head.  What do you mean when you shake your head?  What does that mean?  What is this?

A:     Yes.

Q:     Yes.  That's good.  Okay.  We got that.  That's a hard part.  So we said our name and we said yes.

A:     Yes.

Q:     Good, good job.  Now, . . . I'm going to show you something.

A:     What?

Q:     Okay.  Has she ever had a Coca Cola?  Have you ever seen something that looked like this?  What is this?

A:     Coke.

Q:     Yes.  What color is the can?  What color is this?

A:     Red.

Q:     Very good.  So have you ever had a Coke before?

A:     My mom says no.

Q:     Okay.

A:     That's my mom.

Q:     That's your mom?  Well, . . ., what color sweater is she wearing?  What color is her sweater?  Can you say it again?

A:     Green.

                              . . .

Q:     Okay. Okay.  All right.  So I got a question for you. [I]f I told you your mother's really wearing a red sweater, have I told the truth or a lie?

A:     A lie.

Q:      A lie, that's right.  Because what color is her sweater?

A:      Green.

                                . . .

Q:      . . . Okay.  So since it's - - you said it's bad to tell a lie, is that what you told me?

A:      [Nods head]

Q:      Okay.  So if the attorneys or these people ask you questions, are you going to tell them the truth or tell them a lie?

A:      Truth.

                                . . .

Q:      . . . If you tell a lie, what happens if you tell a lie?

A:      It's not true.

                                . . .

Q:      And if a person tells a lie and it's not true, what happens to them?

A:      They get a spanking.

After the court determined the complainant was competent to testify, on direct examination she said the part of her body she used to "pee-pee" was her "coo coo" and she identified appellant as the person who touched her and she said it was a "bad" thing when he touched her.  She also said her brother was "so funny."  When defense counsel began his cross-examination, the complainant hid below the seat with her head down, at which point the prosecutor introduced complainant to defense counsel and the child was allowed to take a break.  While on break, the complainant sat with her parents in a small side room waiting to again be introduced to defense counsel to "break the ice."  However, before counsel entered the room, the complainant asked her

mother why she could not give her brother a hug, and her mother told her that other people still needed to ask her questions. The complainant then told her mother that her brother did not touch her, "[i]t was for fake." When trial recommenced, on cross-examination she said her favorite game was playing hide and seek with appellant and she wanted to give him a hug. The following questioning then occurred by defense counsel:

Q:      . . . [A]nd is it good or bad to tell the truth?

A:      It's good to tell the truth.

Q;      Okay. And what - - what  - - what does it mean to tell the truth?

Q.      My brother touched my coo coo.

. . .

Q.      . . . Did Daddy tell you to say that last night?

A.      No. . . . .

Defense counsel asked the complainant several times who told her to identify her brother as the person who touched her, and although she gave no direct answer, she answered "maybe" when asked if it was the doctor or the CPS investigator who told her to accuse her brother. When counsel asked about her recanting her testimony while in the side room, the complainant at first denied saying her brother did not touch her, then she said "maybe" she said that. The trial court again allowed a short break, at which time defense counsel raised his objection to the totality of her testimony. When the court denied the objection, defense counsel declined to cross-examine her further, arguing it was futile to do so.

Our review of the entire testimony reveals the complainant wanted to go home to her mother's house, she did not always want to testify, her answers were at times hesitant, and she had a short attention span. And, there is no dispute the complainant's young age and short attention span made questioning by the court, the State, and the defense a frustrating endeavor. However, the complainant demonstrated an ability to understand the difference between the truth and a lie, and the consequences of telling a lie, and she eventually answered each question asked of her. Inconsistencies and conflicts in a child's testimony do not automatically rule her incompetent; rather, they are simply factors affecting the weight of the child's credibility. *See Upton v. State,* 894 S.W.2d 426, 429 (Tex. App.—Amarillo 1995, pet. ref'd); *Kirchner v. State*, 739 S.W.2d 85, 88 (Tex. App.—San Antonio 1987, no pet.). On this record, we cannot conclude the trial court erred in allowing the complainant to testify, nor can we conclude appellant's right of confrontation was violated.

## SUFFICIENCY OF THE EVIDENCE

Appellant asserts the evidence is legally and factually insufficient to support the verdict. We review the sufficiency of the evidence under the appropriate standards of review. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979) (legal sufficiency); *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999) (same); *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006) (factual sufficiency); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996) (same). The standard of review is the same in both direct and circumstantial evidence cases. *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999). In reviewing a challenge to the sufficiency of the evidence in juvenile adjudications, we use the standards of review applicable in

criminal cases. *In re A.C.,* 949 S.W.2d 388, 390 n. 1 (Tex. App.—San Antonio 1997, no writ). The jury is the exclusive judge of the witnesses' credibility and the weight to give their testimony. *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996).

In addition to the above testimony by the complainant, the jury also heard testimony from the complainant's sister, C.H. C.H. testified she was in her grandmother's bedroom when she heard the complainant, who was in the living room of their house, screaming and saying "stop it." C.H. said she looked into the living room and saw appellant on his knees and her sister on the floor. C.H. said appellant "stuck [his finger] through" complainant's "front privates." C.H. explained that she would use her "front privates" to "pee" if she had to use the bathroom. C.H. testified appellant had "a little blood on his finger" when he touched complainant, which he wiped off on a towel. When appellant got up from his knees, the complainant ran to C.H., who cleaned her off. The next day, C.H. told her grandmother what happened.

Appellant's challenge to the sufficiency of the evidence focuses on the complainant's capacity to testify; the testimony of Joann Morales, a friend of the appellant's family; and the complainant's telling her parents that her brother did not touch her, "[i]t was for fake." Morales was present when the CPS investigator came to appellant's and the complainant's home to investigate the allegations against appellant. According to Morales, the investigator repeated the allegations while the complainant was in the room and the complainant could hear what was said, and the complainant repeated back what the investigator said. Finally, Morales said she asked the complainant, about three weeks later, if her brother had touched her and the complainant responded that he did not. On cross-examination by the State, Morales admitted she was not present when the

investigator first arrived at the house and spoke to the complainant at which time the complainant told the investigator about what appellant did to her. Morales also admitted she knew this conversation had occurred when she testified on direct that the complainant repeated back the investigator's allegations.

After a review of the record, we conclude the evidence is legally and factually sufficient to support the jury's verdict.

**BOLSTERING**

After the complainant told her parents her brother did not touch her, "[i]t was for fake," the trial court conducted a *limine* hearing at which the complainant's father, who lives in Florida, testified he believed his daughter was telling the truth when she made the allegations against her brother and not when she recanted. Defense counsel objected, and when the trial court overruled the objection, counsel asked for a running objection to the testimony at trial. The court granted the running objection. On appeal, appellant asserts the trial court erred in allowing the father's testimony into evidence because his testimony went beyond the acceptable limits of rehabilitating a witness. On appeal, the State contends appellant waived this objection because a pre-trial motion in limine does not qualify as a running objection.

We agree that a pre-trial motion in limine does not qualify as a running objection. *See Gilchrest v. State,* 904 S.W.2d 935, 938 (Tex. App.—Amarillo 1995, no pet.). However, in this case trial counsel specifically requested a running objection to the introduction of evidence addressed at the *limine* hearing and the trial court granted counsel's request. Because the trial court granted appellant's running objection to the admission of evidence that he now complains of on appeal, the

State's contention that error was waived is without merit. *See Ford v. State*, 112 S.W.3d 788, 791 (Tex. App.—Houston [14th Dist.] 2003, no pet.). However, assuming without deciding that the trial court erred, we conclude appellant was not harmed by the error. In view of the jury's ability to weigh the credibility of the witnesses, including that of the young complainant, and in view of C.H.'s testimony, we cannot conclude the court's error, if any, had a substantial and injurious effect or influence in determining the jury's verdict. *See* TEX. R. APP. P. 44.2(b); *Rich v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005) (under Rule 44.2(b), we disregard all non-constitutional errors that do not affect appellant's substantial rights and a substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict).

## CONCLUSION

We overrule appellant's issues on appeal and affirm the trial court's judgment.

Sandee Bryan Marion, Justice