No. 04-02-00560-CV



In the MATTER OF Y.H.





From the 386th Judicial District Court, Bexar County, Texas


Trial Court No. 2002-JUV-645


Honorable Laura Parker, Judge Presiding



Opinion by: Catherine Stone, Justice


Sitting: Catherine Stone, Justice

 Sarah B. Duncan, Justice

 Sandee Bryan Marion, Justice

 

Delivered and Filed: June 25, 2003


AFFIRMED

 This appeal presents the question of whether the policy supporting Tex. R. Evid. 803(4), the
medical treatment and diagnosis exception to the hearsay rule, applies to a four year-old, who may
not understand the importance of candor with a medical professional. Appellant makes a powerful
argument on appeal encouraging this court to clarify the type of evidence admissible as "reasonably
pertinent to diagnosis or treatment." Although we agree that guidance in this area of law would have
been helpful to these parties, the facts of this case do not lend themselves to such an opinion. For
that reason, we decline appellant's invitation to elaborate on what does or does not constitute
evidence reasonably pertinent to medical diagnosis or treatment and affirm the trial court's judgment.

Factual and Procedural Background

 Y.H., a juvenile, was charged with delinquent conduct by committing the offense of
aggravated sexual assault of a child. A jury found the charge to be true and the trial court committed
Y.H. to the Texas Youth Commission.

 At trial, R.R., the complainant, who was five years old, testified that when she was four, she
went to a house with her father to fix a car. She stated that once there, a boy offered her some candy
and she accepted. The boy took her to a room where she was alone with him. R.R. testified that the
boy "kissed" her vagina, anus, and mouth with his mouth. She marked the parts of her body the boy
touched on a diagram. Luis Rios, R.R's father, testified as the outcry witness. He stated that on the
day in question, he loaned a lawn mower to Y.H. When Y.H. could not operate the lawn mower,
Rios took R.R. and her three year-old brother to the store where Y.H. worked. Rios stated that while
he repaired the lawn mower, Y.H. took the children behind the store to give them candy. Within five
minutes, Rios repaired the lawn mower and walked around the back of the store to find his children.
Rios saw his son standing alone and then saw Y.H. leading R.R. out of a work room behind the store.
When Rios saw R.R., she was wiping her mouth and both children were noticeably scared.

 Rios testified that when he attempted to ask R.R. why she was upset, Y.H. repeatedly
interrupted them and said R.R. was scared only because the work room was dark. Rios took his
children home and asked R.R. what was wrong. Rios testified that R.R. answered that Y.H. pulled
her pants down and kissed her vagina, anus, and mouth. She explained that she was wiping her
mouth because he had kissed her there. Rios later took R.R. to the police station and to the hospital.

 Gustavo Deleon, a forensic scientist with the Bexar County Criminal Investigations
Laboratory, testified that he tested vaginal and anal swabs taken from R.R. Those swabs contained
large quantities of amalyse, an enzyme found in bodily fluids. Deleon testified that the quantities
of amalyse detected in the swabs were consistent with saliva. The State then called Amy Kercsmar,
another forensic scientist with the Bexar County Criminal Investigations Laboratory. Kercsmar
testified that the sample taken from R.R.'s underwear contained a genetic marker foreign to R.R.
Upon further testing, Kercsmar learned that the underwear contained male DNA. However, there
was not enough of this foreign material to compare to a sample taken from Y.H.

 The State also called Laurie Charles, a sexual assault nurse examiner and coordinator of the
sexual assault program at Santa Rosa Children's Hospital. Over defense counsel's objection, Charles
testified that R.R. told her, "a little boy, 13, kissed my mouth, genitals, and butt. We went to
somebody's house. The boy said he was going to give me some candy. Daddy was fixing a car. The
boy pulled down my pants and underwear. I asked did it hurt and she said no." Charles testified that
R.R.'s statement was translated by a sexual assault nurse examiner who spoke Spanish. Charles'
examination revealed that R.R.'s vagina and anus had been penetrated, possibly by oral contact.
Charles also learned that R.R. had urinated and wiped, which could wash away evidence.

 Y.H. testified in his own behalf and related that as Rios worked on the lawn mower, he
noticed both children wandering behind the store to an area where motors and trash are stored. Y.H.
stated that out of concern for their safety, he told them to get out of that area and go back to their
father. He says R.R. began to cry and Rios took the children home. Y.H. denied ever assaulting
R.R.

Legal Sufficiency Challenge

 Y.H. challenges the legal sufficiency of the evidence to support his conviction. In
considering a legal sufficiency challenge, we review the evidence in the light most favorable to the
verdict to determine whether any rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Young v.
State, 14 S.W.3d 748, 753 (Tex. Crim. App. 2000). This standard is applicable in direct and
circumstantial evidence cases. Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991). Even
improperly admitted evidence must be considered when addressing a challenge to the legal
sufficiency of the evidence. See Rodriguez v. State, 819 S.W.2d 871, 872 (Tex. Crim. App. 1991).

 Y.H.'s charge required proof that he intentionally or knowingly caused the sexual organ or
anus of a child to contact the mouth of another person. See Tex. Pen. Code Ann. § 22.021 (Vernon
2003). R.R. testified that she went to a store with her father, and while there, a boy asked her if she
wanted some candy. When she answered affirmatively, he led her by the hand to a room. R.R.
recalled the boy pulling her underwear down and touching her vagina, her anus, and her mouth with
his mouth. Rios corroborated his daughter's story about going to the store and Y.H. offering the
children candy. Rios also testified that Y.H. was the boy R.R. was alone with at the store.

 We conclude that R.R.'s testimony, combined with her father's identification of Y.H. as the
boy R.R. described, is legally sufficient evidence of guilt. See Ruiz v. State, 891 S.W.2d 302, 304
(Tex. App.--San Antonio 1994, pet. ref'd) ("[t]he testimony of a victim standing alone, even when
the victim is a child, is sufficient to support a conviction for sexual assault."). Y.H.'s challenge to
the legal sufficiency of the evidence is therefore overruled.

Factual Sufficiency Challenge

 In his next issue, Y.H. argues that the evidence of his guilt is factually insufficient. In a
factual sufficiency review, we consider all the evidence in a neutral light and set aside the verdict
only if it is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust." Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). While we may disagree with
the jury's determination, a factual sufficiency review must be "appropriately deferential" to avoid
substituting our judgment for that of the fact finder. Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim.
App. 1996).

 In an attempt to prove that evidence of his guilt is factually insufficient, Y.H. complains of
four areas where the State's evidence is lacking. The first three allegations essentially challenge
R.R.'s trustworthiness. First, he argues that the lack of eyewitnesses and the conflicting stories told
by R.R. undermine her trial testimony. Y.H. testified that he did not assault R.R., and the State
produced no witnesses to testify that they saw an assault. R.R. also told Charles, the sexual assault
nurse examiner, that she was assaulted by a thirteen year-old boy in a house while her father was
working on a car. Y.H. argues that R.R.'s story is unreliable because he was fourteen years old when
he encountered R.R. at the store where her father was working on a lawn mower. Next, he claims
that R.R. was not a trustworthy witness because at trial, she failed to identify Y.H. as the boy who
assaulted her. Third, he argues that R.R.'s testimony is suspect because of the number of times she
was interviewed between the incident and trial. Y.H. also challenges R.R.'s testimony because both
the State and defense counsel asked R.R. leading questions and received conflicting answers to some
of those questions. Finally, Y.H. claims that the forensic evidence fails to establish that his genetic
material was found in R.R.'s underwear.

 The evidence detailed above in support of the verdict's legal sufficiency also supports its
factual sufficiency. R.R. testified that she knew the difference between the truth and a lie, and that
she understood it was bad to tell a lie. Additionally, R.R. was able to tell the court how old she was,
when her birthday was, and what school she attended. On a diagram, R.R. marked the parts of her
body she claimed the boy touched with his mouth, and the body parts she named corresponded to
the places she identified on the diagram. Although R.R. seemed unwilling to recall certain details,
the record indicates that she was a reliable witness. In fact, the record shows that R.R. answered
questions with less hesitation and more cooperation than Y.H. The jury was the sole judge of the
weight and credibility of witness testimony, and this court must be appropriately deferential to those
jury findings. See id.

 Y.H. also argues that the scientific evidence presented by the State fails to establish that Y.H.
assaulted R.R. He claims, essentially, that the State presented factually insufficient evidence of
identity because it was unable to match the male DNA found in R.R.'s underwear to the DNA
sample Y.H. submitted. Although test results would have been helpful in establishing the
perpetrator's identity, they are not crucial. See Kelly v. State, 792 S.W.2d 579, 585 (Tex. App.--Fort
Worth 1990), aff'd, Kelly v. State, 824 S.W.2d 568 (Tex. Crim. App. 1992).

 These attacks on R.R.'s credibility do not show the verdict to be against the overwhelming
weight of the evidence. Furthermore, Y.H.'s challenge to the lack of scientific evidence does not
show the verdict to be unjust. The trial court's judgment is not against the overwhelming weight of
the evidence, clearly wrong, or unjust. See Rodriguez, 819 S.W.2d at 873-73 (victim's testimony
that "someone touched her in a 'bad way'" combined with victim's mother's testimony that victim
told her appellant touched her vagina with his penis was factually sufficient to support conviction
for aggravated sexual assault of a child). We therefore hold that the judgment of the trial court is
supported by factually sufficient evidence.


Hearsay Challenge

 Y.H. argues that the trial court abused its discretion in admitting a sexual assault forensic
examination form which contained R.R.'s statements regarding the age and sex of the perpetrator,
the location of the incident, the perpetrator's offer of candy, and her father's activity of working on
a car at the time. Y.H. complains that this information is not reasonably pertinent to diagnosis or
treatment. Y.H. also asserts that because R.R. was so young and because she did not testify that she
understood she was giving a statement to a recognizable health professional, the trial court should
have at least redacted the statements not reasonably related to medical diagnosis or treatment.
However, when this evidence was received, defense counsel objected only on the basis of probative
value, and no hearsay objection was made.

 Y.H. argues that the trial court again abused its discretion in permitting Charles to recite
statements R.R. made during her sexual assault examination. During her direct examination, Charles
read verbatim from the sexual assault forensic examination form. Defense counsel objected to this
testimony based on hearsay. However, the document and the statements contained in it had
previously been presented to the jury with a limited objection based on Tex. R. Evid. 403.

 Where substantially the same evidence complained of on appeal is received without
objection, any error in admission of the testimony is waived. See Penry v. State, 691 S.W.2d 636,
655 (Tex. Crim. App. 1985). Even though Y.H. made a hearsay objection when Charles testified
about what R.R. told her, this same information had previously been presented to the jury without
a hearsay objection. The trial court does not commit reversible error in such an instance. See
Macias v. State, 776 S.W.2d 255, 259 (Tex. App.--San Antonio 1989, pet. ref'd). Furthermore,
because the information about which defense counsel raised a probative value objection was later
introduced without a probative value objection, Y.H.'s complaint under Rule 403 is also waived.
See Anderson v. State, 717 S.W.2d 622, 627 (Tex. Crim. App. 1986).

 On appeal, counsel for Y.H. argues that, rather than viewing trial objections through 20/20
hindsight, this court should recognize that in the heat of trial, it should be enough that counsel's
objections identify specific evidence as inadmissible. Although we are aware of the pressure placed
on trial counsel to preserve error, an objection must be timely and must state the grounds for the
objection "with sufficient specificity to make the trial court aware of the complaint, unless the
specific grounds were apparent from the context." Tex. R. App. P. 33.1(a). Further, counsel's
objections, either the first objection based on probative value or the second objection based on
hearsay, failed to identify which specific statements were objectionable. On appeal, appellant admits
that some of R.R.'s statements are admissible under Rule 803(4), but he claims at least three of
R.R.'s statements found in the sexual assault examination form were not reasonably related to
medical diagnosis or treatment: (1) that R.R. and her father went to someone's house; (2) that she
was offered candy; and (3) that her father was working on a car. However, appellant never informed
the trial court that these were the three objectionable statements. It was appellant's duty to specify
what specific part of the report was objectionable. Cf., Garner v State, 957 S.W.2d 112, 115 (Tex.
App.--Amarillo 1997, no pet.) (holding that trial court not required to cull through entire pen packet
to determine which matters might be objectionable; counsel must specify objectionable material).
Having failed to do so, the claim of error is not preserved. Y.H.'s complaint about the admissibility
of this evidence is therefore overruled.


Ineffective Assistance of Counsel

 In his fourth and final issue, Y.H. argues he was provided ineffective assistance of counsel.
A juvenile is entitled to assistance of counsel at every stage of the proceeding. Tex. Fam. Code
Ann. § 51.10 (Vernon 2002); In the Matter of M.R.R., 903 S.W.2d 49, 51 (Tex. App.--San Antonio
1995, no writ). The right to counsel is the right to effective counsel. Strickland v. Washington, 466
U.S. 668, 694; Ex parte Graves, 70 S.W.3d 103, 128 (Tex. Crim. App. 2002). To prevail on a claim
of ineffective assistance of counsel, a criminal defendant must show: (1) that trial counsel's
performance was deficient; and (2) a reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different. Id. A reasonable probability is a
probability sufficient to undermine confidence in the outcome of the proceeding. Id. A reviewing
court must assume the trial attorney provided adequate assistance and that all significant decisions
were made in the exercise of reasonable professional judgment. Id. at 689; Roberson v. State, 852
S.W.2d 508, 512 (Tex. Crim. App. 1993). Additionally, appellant's allegations of ineffective
assistance must be firmly grounded in the record. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim.
App. 1994).

 Specifically, Y.H. alleges that his trial counsel performed deficiently by failing to object
when the State entered the sexual assault forensic examination form into evidence. Y.H. also claims
that his trial counsel performed deficiently in failing to cross-examine Charles about inconsistencies
in R.R.'s statements. He argues that these deficiencies prejudiced his defense. However, we cannot
see how admitting the sexual assault forensic examination form into evidence caused prejudice
sufficient to undermine our confidence in the jury's verdict. See Strickland, 466 U.S. at 694. Even
if this evidence had been excluded, the State presented sufficient evidence of Y.H.'s guilt. We
cannot say that but for this line of questioning, Y.H. would have been found not guilty. See id.
Therefore, Y.H.'s fourth issue is overruled.

 The judgment of the trial court is affirmed in all respects.


 Catherine Stone, Justice